# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) | **AMERICAN ATHEISTS, INC.**, a New Jersey Corporation authorized in the State of Oklahoma, | ) ) |
| (2) | **WILLIAM POIRE**, individually, and | ) |
| (3) | **AIMEE BREEZE**, individually, | ) |
| | | ) |
| | Plaintiffs, | ) |
| | -vs- | ) |
| | | ) **No. CIV-13-_____** |
| (1) | **TRAIT THOMPSON**, Chair (Senate) of the State Capitol  Preservation Commission; | ) ) |
| (2) | **VICKIE HICKS**, Member (Governor) of the State Capitol  Preservation Commission; | ) ) |
| (3) | **MARK LIOTTA**, Member (House) of the State Capitol  Preservation Commission; | ) ) |
| (4) | **CAROLYN THOMPSON**, Member (House) of the State Capitol  Preservation Commission; | ) ) |
| (5) | **VACANT SEAT**, Member (House) of the State Capitol  Preservation Commission; | ) ) |
| (6) | **LOU KERR**, Member (Senate) of the State Capitol  Preservation Commission; | ) ) |
| (7) | **JUDY JOHNSON**, Member (Senate) of the State Capitol  Preservation Commission; | ) ) |
| (8) | **PAUL MEYER**, Member (Governor) of the State Capitol  Preservation Commission; | ) ) |
| (9) | **LINDA EDMONDSON,** Member (Governor) of the State Capitol Preservation Commission; | ) ) |
| (10) | **BRUCE FISHER,** Member (Supreme Court),  of the State Capitol Preservation Commission; | ) ) |
| (11) | **DUANE MASS**, *Ex-officio*, Capitol Architect and Curator; | ) ) |
| (12) | **MICHELLE DAY**, *Ex-officio*, Administrator, Division of Capitol Assets Management | ) ) |
| (13) | **DOUG KELLOGG**, *Ex-officio*, Capitol Building Superintendent; | ) ) |
| (14) | **JAMES PICKEL,** *Ex-officio,* Chair- Oklahoma Arts Council; | ) ) |
| (15) | **EMMY STIDHAM**, *Ex-officio*, President – Oklahoma Historical Society, | ) ) |
| | each Defendant is sued in their official capacity for purposes of declaratory and prospective injunctive relief, | ) ) ) |
| | Defendants. | ) |

1

## COMPLAINT FOR
## DECLARATORY AND INJUNCTIVE RELIEF

**(Violation of Establishment Clause of the First Amendment, Due Process, and Equal Protection Clauses of the Fourteenth Amendment, and the Supremacy Clause)**

# I. -Preliminary Statement-

1.       Plaintiffs American Atheists, Inc., William Poire, and Aimee Breeze bring this action against the individual Defendant members of the State Capitol Preservation Commission of the State of Oklahoma in their official capacities, seeking to protect the individual Plaintiffs' civil and constitutional rights and the individual civil and constitutional rights of members of American Atheists, Inc. These include the right to be free from government intrusion into, entanglement with, and endorsement of religious matters, and the right to due process and equal protection of the laws.

2.       This action challenges the constitutionality, under Federal law, of the State of Oklahoma's placement of a massive monument displaying an abridgement of a portion of religious text originating from a Hollywood movie director's rendition of one of many versions from the Bible (commonly and collectively referred to as the Ten Commandments and referred to herein as the "Display"). The Display was placed on the grounds of the State Capitol Building ("Capitol") which Plaintiffs contend is a violation of the Establishment Clause of the First Amendment and the Due Process and Equal Protection Clauses of the Fourteenth Amendment. The Display is over 5 (five) feet tall and appears to be made of stone. The Display is inscribed with religious text across its face. Along its base are large letterings that states: "THE TEN COMMANDMENTS." No other historic documents or icons are exhibited with the Display.

3.      The placement of the Display was authorized by direct legislative action of the Oklahoma Legislature in a directive to the State Capitol Preservation Commission pursuant to 74 Okla. Stat. Sec. 4110 ("Ten Commandments Monument Display Act" herein "Monument Display Act").[1] The approval and passage of the Monument Display Act in 2009 by the Legislature and its approval by the Governor and any accompanying legislative enactments, actions, or regulations promulgated in support of the Act is ". . . a law respecting an establishment of religion" in violation of the First Amendment.

4.      Plaintiffs seek declaratory and injunctive relief pursuant to 42 U.S.C. Sec. 1983 together with costs and attorneys' fees in accordance with Rule 54(d) of the Federal Rules of Civil Procedure and 42 U.S.C. Sec. 1988, and such other and further relief as the Court may deem just and equitable and to which the Plaintiffs are entitled under the facts and law of this action.

## II.  -Jurisdiction and Venue-

5.      **JURISDICTION**. Jurisdiction is conferred by 28 U.S.C. Sec. 1343(a) (civil rights violations) and 28 U.S.C. Sec. 1331 (federal question), which provide for original jurisdiction of this Court in suits that arise under the Constitution, laws, or treaties of the United States.

6.      Plaintiffs' causes of action arise under 42 U.S.C. Sec.1983 to redress the deprivation under color of State law of rights, privileges, and immunities secured by the Constitution of the United States and laws;  28 U.S.C. Sec. 2201 (declaratory relief);  and 28 U.S.C. Sec. 2202 (further relief) against the named Defendants in their official capacity as

---

[1]  A copy of 74 Okla. Stat. Sec. 4110 including its uncodified findings is attached to this Complaint as Exhibit 1.

provided by *Ex parte Young*, 209 U.S. 123 (1908). These claims are predicated on violations of the First and Fourteenth Amendments of the Constitution of the United States and the Supremacy Clause of the Constitution of the United States.

7.    The First Amendment of the United States Constitution prevents the passage of laws which respect the establishment of religion.

8.    The Fourteenth Amendment provides for due process and equal protection of the laws and also makes the First Amendment applicable to state actors, such as the Defendants, through its due process clause.

9.    Article VI, cl. 2 of the United States Constitution provides, "This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary."

10.    Although not a claim or cause of action in this case, Plaintiffs identify that Article VI, cl. 3 of the United States Constitution provides, "the <u>Members of the several State Legislatures</u>, and all executive and judicial Officers . . . of the several States, shall be bound by Oath or Affirmation, to support this Constitution; but no religious test shall ever be required as a qualification to any office or public trust under the United States" (emphasis added).  An affirmative vote for a law "respecting an establishment of religion" is a violation of an oath "to support this Constitution."

11.    Personal jurisdiction is proper in this court because Defendants' offices are located within this District, the placement of the subject Display is within this District, and one individual Plaintiff resides in this District.

4

12.    Venue is proper in this Court because "a substantial part of the events" at issue occurred within this District. 28 U.S.C. Sec. 1391(b)(2). Defendants' offices are located within this District. The Display and other public property placed at issue herein is located within the bounds of this District. Venue is also proper in this Court in that at least one Defendant resides in this District or may be served within the District, has an office located in this District, and receives mail in this District.

13.    On information and belief, this Court has jurisdiction over the subject matter of this action and can acquire *in personam* jurisdiction over all Defendants named in this action, any additional defendants who might be named, or any persons subject to injunctive relief pursuant to Fed. Rul. Civ. Pro. 65.

14.    Plaintiffs also assert they are entitled to costs pursuant to Rule 54(d) of the Federal Rules of Civil Procedure and fees and litigation expenses pursuant to 42 U.S.C. Sec. 1988.

## III.  -Plaintiffs-

15.    All factual allegations contained in the preceding paragraphs are incorporated herein as if set out in full.

16.    The Plaintiff American Atheists, Inc., (herein "American Atheists") is a New Jersey educational, non-political, non-profit corporation with members, offices and/or meeting locations nationwide and in various municipalities, including, but not limited to, municipalities within the State of Oklahoma. American Atheists is a membership organization dedicated to advancing and promoting, in all lawful ways, the complete and absolute separation of church and state and to preserving equal protection for atheists of the constitutional protections found in the Bill of Rights, and, in particular, the First Amendment to the United States Constitution. Besides

5

the individual Plaintiffs herein, American Atheists has other members who are residents within the State of Oklahoma and who have the right to travel to the State Capitol to exercise First Amendment rights, including free speech and the right to petition the government for a redress of grievances. American Atheists brings this action to assert and protect the federal rights of its members in its challenge to the Display.

17.     Plaintiff William Poire (herein "Poire") is an individual and resident of Wagoner County, State of Oklahoma, United States of America. Mr. Poire is a member of American Atheists, Inc.  The presence of an overtly religious monument at the seat of Oklahoma government is contrary to Plaintiff Poire's strongly held beliefs and views about religion, since he is an atheist. He views the Display's placement by direct enactment of the Legislature at the seat of government as an endorsement of religion. Because the Display was placed there by action of the Legislature through a "law respecting the establishment of religion," it involves Plaintiff Poire, through indirect compulsion as a citizen of the State of Oklahoma acting through a Legislature and other government officials, to support the substance and meaning of the religious messages contained on the Display, even though those messages are antithetical to his beliefs and views. The presence of the Display discourages Plaintiff Poire from travel to the Capitol for any purpose, including the exercise of his free speech rights, and to petition the government for a redress of grievances and he avoids such travel to the Capitol.

18.     Plaintiff Aimee Breeze (herein "Breeze") is an individual and resident of Oklahoma County, State of Oklahoma, United States of America. Ms. Breeze is a member of American Atheists, Inc., and is also a member of other advocacy groups including FreeOK, Americans United for the Separation of Church and State, and the Secular Coalition for America. The presence of an overtly religious monument at the seat of Oklahoma government is contrary

6

to Plaintiff Breeze's strongly held beliefs and views about religion, since she is an atheist. She views the Display's placement by direct enactment of the Legislature at the seat of government as an endorsement of religion. Because the Display was placed there by action of the Legislature through a "law respecting the establishment of religion," it involves Plaintiff Breeze, through indirect compulsion as a citizen of the State of Oklahoma acting through a Legislature and other government officials, to support the substance and meaning of the religious messages contained on the Display, even though those messages are antithetical to her beliefs and views. Plaintiff Breeze lives in Oklahoma City and she, in her capacity as a member of the various identified advocacy organizations, travels to the State Capitol for various reasons in the exercise of her First Amendment free speech rights and to petition the government for a redress of grievances. She attends legislative sessions to see what is happening with particular legislation that is of interest to her and to the organizations with which she is associated and represents. While at the State Capitol, she is confronted by the Ten Commandment Display, which she views as hurtful and exclusive and therefore avoids the area of the Display while at the Capitol.

19.    Mr. Poire, Ms. Breeze, other members of American Atheists (including, but not limited to members of American Atheists who reside in the State of Oklahoma), and various other citizens and residents of the State of Oklahoma who may hold similar views to those of these individual Plaintiffs, yet are harmed by the sponsorship and endorsement of religious messages by the State of Oklahoma, which indirectly compels participation by such persons in an overt religious Display on public grounds placed there by the Oklahoma Legislature with a "law respecting the establishment of religion." The placement of the Display results in unwelcome contact by the individual Plaintiffs and other members of Plaintiff American Atheists with the Display, during times that such members of American Atheists and other similarly

situated citizens need to use State facilities available only at the State Capitol building. Such members have standing to sue in their own right.

# IV.  -Defendants-

20.     All factual allegations contained in the preceding paragraphs are incorporated herein as if set out in full.

21.     The individual Defendants and related individuals who would be subject to any order of this Court under Fed.Rul.Civ.Pro. 65 granting injunctive relief are members or *ex officio* members of the STATE CAPITOL PRESERVATION COMMISSION.  Its website lists offices located in the Western District and contact information as follows:

> State Capitol Preservation Commission
> Will Rogers Office Building
> P.O. Box 53218
> 2401 N. Lincoln Blvd., Suite 206
> Oklahoma City, OK 73152-3218
>
> Local: (405) 522-0440
> Fax: (405) 521-6403
> Contact: Beverly.Hicks@omes.ok.gov
>
> Office Hours
> 8 a.m.-5 p.m., Monday-Friday

22.     The Commission was created in 1982 (74 Okla. Stat. Sec. 4101 *et seq*.) to plan and supervise the preservation and restoration of the interior and exterior of the Oklahoma State Capitol Building. By statute, the Commission controls the display of art objects in public areas of the State Capitol building and the first floor of the Governor's Mansion. 74 Okla. Stat. Sec. 4102. The Commission consists of 15 (fifteen) members and are appointed representatives of various State governmental offices. There are five *ex-officio* members. 74 Okla. Stat. Sec. 4103.

8

Nothing in the Statute or the Rules of the Commission[2] limit the voting rights of *ex-officio* members. The current officeholders and the source or reason for their appointment are as follows:

     A.     Trait Thompson, Chair, Senate;

     B.     Vickie Hicks, Governor;

     C.     Mark Liotta, House;

     D.     Carolyn Thompson, House;

     E.     Vacant, House;

     F.     Lou Kerr, Senate;

     G.     Judy Johnson, Senate;

     H.     Paul Meyer, Governor;

     I.     Linda Edmondson, Governor;

     J.     Bruce Fisher, Supreme Court;

     K.     Duane Mass, *Ex-officio*, Capitol Architect and Curator;

     L.     Michelle Day, *Ex-officio*, Administrator, Division of Capital Assets Management;

     M.     Doug Kellogg, *Ex-officio*, Capitol Building Superintendent;

     N.     James Pickel, *Ex-officio*, Chair - Oklahoma Arts Council;

     O.     Emmy Stidham, *Ex-officio*, President - Oklahoma Historical Society.

---

[2]   See  <https://www.ok.gov/dcs/searchdocs/app/manage_documents.php?att_id=2605> (lasted checked 1/9/2014).

23.     There may be other persons who receive actual notice of an order or injunction of this Court, including the parties, the parties' officers, agents, servants, employees, and attorneys; as well as other persons who are in active concert or participation with anyone described in Fed.Rul.Civ.Pro.  65(d)(2)(A) or (B) who are subject to the authority of injunctions issued by this Court. It is the intention of these Plaintiffs that such persons be bound by any injunction and by any further orders of this Court, and Plaintiffs respectfully ask that any such persons be joined as party defendants to this action as may appear necessary and proper to the Court for the enforcement of its orders.

## IV.  -Additional Factual Allegations-

24.     All factual allegations contained in the preceding paragraphs are incorporated herein as if set out in full. Although allegations may be identified with regard to particular Plaintiffs and Defendants, it is intended that if any allegation may be applied to other Plaintiffs or Defendants, the allegation should be liberally construed to apply to them.

25.     The Oklahoma State Capitol, located in Oklahoma City, Oklahoma County, State of Oklahoma, United States of America (herein referred to as the "Capitol") was established as the official seat of Oklahoma's government by 73 O.S. Sec.1.

26.     The Capitol is used daily, inclusive without limitation, as follows:

      A.     for transaction of public business by all three branches of Oklahoma state government;

      B.     by public officials in the furtherance of their duties;

      C.     by private citizens, including but not limited to the Plaintiffs (or other members of Plaintiff American Atheists) herein, to monitor and petition their government, visit public offices in the Capitol to utilize government

and public services, apply for and receive government benefits, serve the government of the State of Oklahoma, attend and observe legislative sessions of the Legislature, and engage in other lawful activities.

27.     The Capitol building is an ornately designed, distinctive and dignified building, designed and maintained in a manner so as to have cultural and political significance to persons inside and outside of the State of Oklahoma.

28.     While most aspects of the operation and maintenance of the Capitol building and grounds are under the control of the Oklahoma Office of Management and Enterprise Services, as provided by 73 Okla. Stat. Sec. 15, Defendant Oklahoma Capitol Preservation Commission is charged specifically with duties concerning the planning and display of museum quality "art objects" within both the interior and exterior spaces of the Capitol. 74 Okla. Stat. Sec. 4102. "Such works of art shall be <u>directly related</u> to the history and culture of the State of Oklahoma." 74 Okla. Stat. Sec. 4104(A)(2) (emphasis added).

29.     On or about November 1, 2009, the Capitol Preservation Commission was authorized and commanded by the Oklahoma Legislature, ". . .to permit and arrange for the placement on the State Capitol grounds of a suitable monument displaying the Ten Commandments." 74 Okla. Stat. Sec. 4110(B). (See Ex. A).

30.     The Capitol Preservation Commission was also authorized and commanded, ". . . to assist private entities in selecting a location for the monument and arranging a suitable time for its placement." 74 O.S. Sec. 4110(B). It does not appear that the Legislature appropriated any public funds to create the Display, instead "This monument shall be designed, constructed, and placed on the Capitol grounds by private entities at no expense to the State of Oklahoma." 74 Okla. Stat. Sec. 4110(B).

31.    After enactment of the commands and authorizations of  74 Okla. Stat. Sec. 4110(B), the Defendant members of the Commission arranged for the placement of such a Display, donated by Dr. Mike Ritze and his family. Dr. Ritze is a member of the Oklahoma House of Representatives from the City of Broken Arrow, County of Wagoner, State of Oklahoma.

32.    The Commission approved and authorized the placement of the Display on its current site on the north side of the Capitol building, located as an extension of the existing sidewalk, which will be described later in more detail. In such approval, authorization, and placement, the Defendant Commission did so pursuant to the direct command of the Legislature and not under its discretionary authority to approve and select museum-quality art objects on behalf of the State of Oklahoma.

33.    The Display stands alone, and is not part of a larger collection, array, family, or set of similar or comparable works of art, displays, monuments, statues, markers, slabs, memorials, messages, tablets, pillars, steles, tokens, or graven images of any kind or nature.

34.    Upon information and belief, Plaintiffs allege that this siting and design process required the expenditure of public funds including, but not necessarily limited to, the action of the Commission itself and the publicly funded work of the Capitol Architect and Curator, who holds a contracted position with the State of Oklahoma to perform public duties for which he is compensated with public funds through the Office of Management and Enterprise Services as authorized by 74 O.S. Sec. 4105. Placement of the Display would have also involved the active participation of the Capitol Building Superintendent and other state employees who are members of the Commission who are also public employees and hold their *ex-officio* positions by virtue of said employment and position.

35.    Following the siting process, on or about November 15, 2012, the Display was erected on the Capitol grounds per the direction and permission of the Defendants and continues to reside there.

36.    The current appearance of the Display differs from its appearance upon placement in two ways: First, ornamental or upgraded tile has been installed on top of the concrete slab at its base. Second, three apparent spelling errors have been corrected in the engraving of the Display's text.

37.    The Display itself physically consists of a large vertical slab of cut and polished granite, with an aesthetic appearance common to that of tombstones or commemorative memorials or displays. The slab is essentially rectangular but for its top, which consists of two adjacent arched or semi-circular shapes.

38.    The Display stands approximately 6 (six) feet and 4 (four) inches tall, 3 (three) feet and 8 (eight) inches wide, and 4 (four) inches thick. The Display is placed approximately 10 (ten) feet from the northeast corner of the Capitol's north transept, with the broad sides facing to the North and South, respectively.

39.    The north face of the Display is blank, while the south face, exposed directly to the Capitol building, and viewable through numerous windows on the north side of the Capitol's East Wing, depicts the entirety of the Display's text and iconography.

40.    The Display's location places it on the raised foundation platform, or dais, on which the Capitol building is built. This dais runs all around the Capitol building, broken only by a few service entrances and ADA-compliant public entrances into the Capitol's first floor or basement, which bypass the several grand staircases that are the only other means of public access to the platform or Capitol building upon it from ground level.

41.    The dais, by its raised stature and grand entrances, gives a dignified and solemn appearance to whatever is placed upon it. The Display is the only monument, memorial, statue, stone, tablet, stele, graven image, or artistic display of any kind visible anywhere on this dais, which otherwise is occupied only by the Capitol building itself, its concomitant ornamentation, and sidewalks following the Capitol building's perimeter.

42.    The Display itself is designed around a clear, unambiguous, unequivocal and conspicuous religious message, making emphatic and explicit references to God in divine terms and making various religious commands.

43. The Display includes the following principal text (as corrected), presented here in like capitalization, alignment, and indentation to that on the Display:

the Ten Commandments

I AM the LORD thy God.

Thou shalt have no other gods before me.

Thou shalt not make to thyself any graven images.

Thou shalt not take the Name of the Lord thy God in vain.

Remember the Sabbath day, to keep it holy.

Honor thy father and thy mother that thy days may be long upon the land which the Lord thy God giveth thee.

Thou shalt not kill.

Thou shalt not commit adultery.

Thou shalt not steal.

Thou shalt not bear false witness against thy neighbor.

Thou shalt not covet thy neighbor's house.

Thou shalt not covet thy neighbor's wife, nor his manservant, nor his maidservant, nor his cattle, nor anything that is thy neighbor's.

44.    This textual choice is identical to that on the Ten Commandments monument placed upon the grounds of the Texas State Capitol by the Fraternal Order of Eagles in 1961, one of many placed with the support of Hollywood film director Cecil B. DeMille as he promoted his famous 1956 film, *The Ten Commandments*, starring Charlton Heston and Yul Brynner.

14

45.    The actual text of the Ten Commandments, also known as the Decalogue, has been translated in numerous different ways since its apparent origination in ancient Hebrew. As such, there is no universally agreed-upon definitive version. It differs even from what might be considered "original" sources. For example, the Ten Commandments appear in two different books of the Hebrew Bible, Exodus 20:1-17 and Deuteronomy 5:4-21. The text is not identical between these two particular sources, and the Commandments vary both in title, text, number, and numerical order from other common sources or versions of the Commandments.  In some religious doctrine, the Commandments are referred to as "ten words" (biblical Hebrew), "ten verses" (Tyndale and Coverdale English translations), "tenne commandements" (Geneva Bible), and "ten commandments" (King James Version). Despite these variations of title, text, number, and numerical order, the Ten Commandments embody principles of sacred worship, conduct, ethical behavior, and signify clear, deep spiritual and religious meaning to many Christians and Jews.  Their religious context is clear and unmistakable.

46.    This particular text represents an English translation of the Ten Commandments inconsistent with those officially adopted by the Catholic Church and within Orthodox Judaism, generally conforming more closely to particular Protestant interpretations of the text (but not all Protestant interpretations).

47.    The principal text is entirely in the same font and size, but for the first two lines. The title, "the Ten Commandments," is in the largest font. Centered below it, set apart from the other commandment text, is the phrase, "I AM the LORD thy God." In addition to being centered, it is engraved in a substantially larger font than the remainder of the text.

48.    The text's display of "I AM" and "LORD" in all capital letters is consistent with common practice in most versions of the Old Testament and the writings of Christian theologians

15

and clergy. It carries with it an emphasis on the Biblical tenets that God's existence transcends the temporal and secular world and that God is the final and ultimate authority over all things.

49.     The first commandment of the Display, if it were part of Oklahoma law, would be unconstitutional, because it would establish, at a minimum, Jewish and Christian monotheism as the law of the land.  The very bedrock of the First Amendment's Establishment Clause is that the United States does not permit the establishment of a religion, the preference of religion over nonreligion, or the preference of one religion (or a subset of religions) over others.

50.     The second commandment of the Display prohibits the making of "graven images."  However, if this commandment were part of Oklahoma law, it would fail as a violation of citizens' free speech and expression rights protected under the United States and Oklahoma Constitutions. From the foundation of the United States, the making of graven images has been part and parcel of being an American, honoring our Founding Fathers, and honoring the United States.

51.     The Ten Commandments Display itself may also be regarded as a "graven image," due to the imagery carved upon it along with the text.  Other works of art depicted in and around the Capitol building commonly depict various "graven images."

52.     The third commandment of the Display, as with the second, would be a violation of the United States and Oklahoma Constitutions.  A prohibition of taking a name in vain, even of one subset of religion's "Lord," would in most cases be a violation of every citizen's right to free speech and expression.

53.     The fourth commandment of the Display is essentially a religious test, which would require citizens to remember a particular Sabbath Day and "keep it holy."  Originally, the Sabbath was Saturday. Christians generally have changed it to Sunday, although some Christian

denominations still consider Saturday the Sabbath.  In any case, requiring citizens to engage in a religious practice is inconsistent with the First Amendment's protection under the Establishment Clause.  It would constitute both an establishment of religion, and also a clear restriction on a citizen's free exercise rights. The injunction that citizens must "remember" a Sabbath Day is also an invasion of their minds, which, if enacted into law, would reach the hand of government into the very thoughts of citizens.

54.    The fifth commandment of the Display requires persons to honor their fathers and mothers without qualification or condition, and implies that failure to do so will result in a person's shortened longevity. ("Honor thy father and thy mother that thy days may be long upon the land which the Lord thy God giveth thee.") If enacted into law, the fifth commandment would not pass constitutional muster under the First Amendment.

55.    The sixth, seventh, eighth and ninth commandments are all commonly understood "wrongs." These are the only four commandments listed which bear any relation to lawful action by state or federal authorities relative to persons within their jurisdictions.

56.    The last commandment on the Display imposes another invasion into the human mind. It effectively creates a "thought crime," wherein the citizenry is enjoined not to "covet" certain items. The items listed include people such as one's "wife" and "servant" as among "things" like homes and cattle that are possessed by people. Absent is a reference to thy neighbor's "husband." If this were part of Oklahoma law, it arguably would fail on Equal Protection grounds, unless torturously interpreted differently than its plain meaning.

57.    Above the principal text, the Display features engraved images of two tablets with faux ancient text, appearing to symbolize one or both of the two sets of two stone tablets on which, according to Biblical tradition, Moses twice delivered the original Ten Commandments to

the people of Israel after they were written by God atop Mount Sinai, the first set being smashed in anger over the peoples' corruption in worshiping an idol in Moses' absence, and the second set being placed in the Ark of the Covenant.

58.    Between the images of the two tablets, the Display depicts a further engraved or graven image of a symbol most commonly known as an "Eye of Providence" or "All-seeing Eye of God." This symbol consists of an image of an open human eye in the center of an equilateral triangle. Surrounding the triangle are radial lines emanating in all directions, symbolizing the endless and ubiquitous power, sight, and/or glory of God.

59.    Within the context of the Display, the graven eye is consistent with emphatically Christian religious iconography found within the stonework and stained glass of numerous cathedrals and churches in Europe and the United States.

60.    Immediately below the All-seeing Eye of God, the Display depicts its lone non-religious iconography, a graven image of a bald eagle straddling and clutching a partially unfurled American flag (flying upside-down).

61.    Below the principal text, the Display features two six-pointed stars in the shape of geometric hexagrams, made by joining opposed equilateral triangles, known commonly as Stars of David or *Magen David* (Shield of David), a symbol to which some scholars attribute deep theological significance, but most commonly associated in a modern context with Judaism, for example, appearing on the flag of the State of Israel.

62.    Centered between these Stars of David, the Display depicts an engraved symbol known as a "Chi-Rho," a form of Christogram in which the first two letters of the Greek word for "Christ" (Chi and Rho) are superimposed in such a manner as to symbolize or reference the cross on which, according to Christian Biblical tradition, Jesus was crucified before being

18

resurrected from the dead.

63.    The Chi-Rho is a symbol widely used in Christian iconography for approximately 1,700 years. The version depicted on the Display is the simplest form of the Chi-Rho. More complex versions commonly feature the Greek letters alpha and omega to each side and/or a surrounding wreath symbolizing Christ's resurrection and eternal life.

64.    At the very bottom, below the Chi-Rho, the Display shows its lone nonreligious text, which reads: "Presented to the people of Oklahoma by Dr. Mike and Connie Ritze and Children Amity, Heidi and Jamey."

65.    In the intervening months since the Display was placed on the Capitol grounds, no other monuments, memorials, steles, statuary, graven images, or displays have been placed or planned for the vicinity of the Display.   In fact, on December 19, 2013, the Defendant Commission members, in response to litigation, declared a "moratorium" on the placement of any other monuments until a court dispute over the current Ten Commandments monument is settled.

66.    The moratorium decision by the Commission did not include removal of the current Ten Commandments Display, and thus the decision allows exclusive and continued exhibition of the Ten Commandments Display to the detriment of consideration of other monuments which might have a clearly nonreligious message, or are related to other issues of civic virtue such as the Constitution or the Bill of Rights. Although the original "purpose" of the Oklahoma Legislature in enacting 74 Okla. Stat. Sec. 4110(B) was to enable the placement of a Display of religious text with deep religious significance at the seat of State Government on the grounds of the Capitol, the moratorium leaves the Ten Commandments Display as the sole monument in the physical area of its placement, and thus creates the "effect" of an endorsement

or promotion of its religious text and content by its exclusive display.

67.     The moratorium itself violates the Establishment Clause because there was no perceived need for a moratorium until organizations of other religious faiths or beliefs sought the placement of other monuments relating to their religious heritages.  As such, in their selection of the Ten Commandments display and in their declaration of a moratorium as to monuments proposed by other religious faiths or beliefs, the Historical Preservation Commission is making a choice of preference for the Ten Commandments Display causing, the Commission to be "entangled" in a decision-making process based upon religious content or context. A refusal to even consider other religious monuments is a rejection, even if temporary, of those monuments and the corresponding religious beliefs which they represent.

68.     While the position of Plaintiffs is that no monuments of religious content should be allowed on the Capitol Grounds, if it be determined that monuments are permitted, Plaintiff American Atheists would seek placement of a monument on the Capitol Grounds to the guiding principles of its organization.  With the declared moratorium, such an application would be futile at this time.  American Atheists promotes the stimulation and freedom of thought and inquiry regarding religious belief, creeds, dogmas, tenets, rituals, and practices. It seeks to collect and disseminate information and literature on all religions in order to promote a thorough understanding of them. It encourages the development and public acceptance of a humane ethical system that stresses the mutual sympathy, understanding, and interdependence of all people and the corresponding responsibility of each individual in relation to society.  American Atheists promotes the mental attitude which accepts the supremacy of reason and aims at establishing a life-style and ethical outlook verifiable by experience and scientific method independent of all arbitrary assumptions of authority and creeds consistent with the complete and absolute

separation of church and state and the preservation of equal protection for Atheists under the Bill of Rights.

69.     Moreover, there is an additional legal effect of endorsement in that the Ten Commandments Display was placed by a preferred legislative process resulting from the passage of 74 Okla. Stat. Sec. 4110(B), while other proposed monuments must go through the procedures of the Historical Preservation Commission, which have different criteria and procedures, thus violating the Fourteenth Amendment's constitutional guarantee of equal protection of the laws.

70.     The Display is the chattel property of the State of Oklahoma, having been donated to the people of Oklahoma and placed upon public land on the grounds of the Oklahoma State Capitol.  Despite the private source of funding for its creation and acquisition, it is no longer private property, but incontrovertibly public property.

71.     The Display conveys an explicit religious message that supports and endorses and advances the faiths and creeds of some churches and sects, and excludes and disparages others.

72.     The Display's positioning, in a setting in which no other monuments or memorials are similarly situated or intermixed, further lends to the Display's effect of conveying state endorsement and support of its explicitly religious message.

73.     As public property with undeniable religious content and statutorily endorsed by the Oklahoma Legislature, the Display represents to the average First Amendment "observer" that the State of Oklahoma approves its placement, and content in particular, despite it being a "gift," in that it was "Presented to the people of Oklahoma . . ."  But individual Plaintiffs and Oklahoma citizens Poire,  Breeze, and many other individual members of American Atheists do not consent to the receipt of such a gift or the unwelcome advance of the religious views of "Dr. Mike and Connie Ritze and Children Amity, Heidi, and Jamey."  Respectfully, even in

consideration of the sincerity of those religious views, Dr. Mike and Connie Ritze and Children Amity, Heidi, and Jamey are not entitled to proselytize their individual religious views and subject the people of the State of Oklahoma, including the individual Plaintiffs or individual members of American Atheists, to those views from an exclusive permanent location on the State Capitol grounds.

74.    The Plaintiffs herein, as citizens of the State of Oklahoma and as taxpayers with a constituent interest in the appropriate disposition of public property, have suffered and continue to suffer injury as a result of the illegal use of the Display and the property on which it is placed to support and endorse specific and exclusive faith traditions.

75.    This endorsement, and its converse coercive effect on those with faith traditions inconsistent with those supported by the Display, force Plaintiffs to endure a continuing violation of the peoples' liberty of conscience, committed in their names as citizens of Oklahoma.

76.    Plaintiffs object to the use and display of the Display due its co-option of their religious traditions, resulting in a cheapening and degradation of their shared faith. The individual Plaintiffs and members of Plaintiff American Atheists conduct ongoing activity at the State Capitol and/or plan to do so in the future so as to face direct confrontation and challenge from the Display's message.  Plaintiff Poire simply avoids the State Capitol on an ongoing basis.

77.    As constituents and taxpayers of the State of Oklahoma, the Plaintiffs herein retain an interest in the Display itself, the land on which it is placed, and any and all public funds expended in its placement and maintenance.

78.    The Display is patently religious in nature, has a primary purpose of advancing religion, and is not part of any broader exhibit that is historical or otherwise.  It stands alone and is individually State-sanctioned.

# VI.   -Claims for Relief-

Plaintiffs come before the Court and incorporate all allegations previously stated as if set out in full herein and make the following claims against these Defendants:

79.    An actual controversy exists as to the right of the Defendants to permit the placement use, and continued presentation of the Display, and as to its continued legal status. These controversies are justiciable pursuant to federal law.

80.    Under the Supremacy Clause, individual states are obligated to comply with the First Amendment of the United States Constitution as incorporated through the Due Process Clause of the Fourteenth Amendment.

81.    Under the Fourteenth Amendment, "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

82.    Freedom of and from government sponsored and endorsed religion is a fundamental right.

83.    74 Okla. Stat. Sec. 4110 is a "law respecting the establishment of religion" forbidden by the Establishment Clause of the First Amendment and has a purpose which is religious in nature, and the uncodified findings represent an unconstitutional effect and endorsement of religious belief.

84.    Citizens who appear at the Oklahoma State Capitol are confronted with a specific Judeo-Christian religious message as represented by the Display, which is prominently and exclusively placed in a position of primacy. Such display, at the seat of government established for all the citizens of Oklahoma, is a form of compelled support of one sub-set of one religion to

23

the exclusion of persons not of that sub-set of religion or of non-believers.

85.    By legislating, approving, designing, constructing, erecting, and/or maintaining a Ten Commandments Display at the Oklahoma State Capitol, the Defendants are discriminating against non-believers, discriminating against believers in excluded and/or non-Christian faiths, and denying non-believers and believers alike Equal Protection of the Laws.

86.    The continued government sponsorship and maintenance of the Ten Commandments Display constitutes a subsidy or subsidies of religion, religious speech, and religious practices.

87.    The Oklahoma Legislature's enactment of 74 Okla. Stat. Sec. 4110 and Defendants' policies and practices are not narrowly tailored to promote a compelling, overriding, or legitimate governmental interest.

88.    There is no compelling or even rational reason for the Oklahoma Legislature and the Defendants to limit the Ten Commandments Display to one sub-set of one religion, and exclude and discriminate against all others in violation of Equal Protection.

89.    Defendants have excluded and invidiously discriminated against the Plaintiffs and all non-believers from its monument policies, practices, and customs, by expressly including only one monument (the Display) in its compliance with the statutory command of the State of Oklahoma. This exclusivity is only accentuated by the declared "moratorium," which disallows the placement of any other monument in the location or area of the Ten Commandments Display.

90.    The principal or primary purpose of the Display is not secular, but rather is to advance a particular religion and religious doctrine.

91.    The Display has an effect which constitutes support of a particular religion.

92.    The Display constitutes a government endorsement of a particular religion.

93.     The Display fosters an excessive entanglement between government and religion.

94.     The Display deprives Plaintiffs of their rights, privileges, or immunities secured by the United States Constitution and/or otherwise by law.

95.     IRREPARABLE HARM. Due to the Defendants' unlawful discrimination and disparate treatment of Plaintiffs, the Plaintiffs have suffered and will continue to suffer irreparable harm to their First Amendment constitutional rights as citizens who reside in the State of Oklahoma, pay taxes in the State of Oklahoma, and utilize the machinery of State Government and the State Capitol building.  Plaintiffs' injuries are continuing and repeated each day the Display is permitted to remain in violation of the United States Constitution. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also, e.g., Pacific Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1235-36 (10th Cir. 2005) (noting presumption of irreparable harm where First Amendment rights are implicated).   "A plaintiff suffers irreparable injury when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain." *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1156 (10th Cir. 2001).   Furthermore, "[w]hen an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001).

96.     NO ADEQUATE LEGAL REMEDY. Plaintiffs have no adequate remedy at law because legal relief cannot remedy the denial of the individual Plaintiffs and the members of American Atheists' First and Fourteenth Amendment fundamental rights. Unless the Display is removed by order of this Court, Plaintiffs' constitutional rights will continue to be violated.

97.     BALANCE OF HARM. The balance of harm as to irreparable injury to Plaintiffs

in comparison to the "harm" to Defendants weighs in Plaintiffs' favor. When a law that legislators or voters wish to enact is likely unconstitutional, their interests do not outweigh those of the Plaintiffs in having their constitutional rights protected. *Awad v. Ziriax*, 670 F.3d at 1132 *citing Coal. for Econ. Equity v. Wilson*, 122 F.3d 692, 699 (9th Cir. 1997).

98.    PUBLIC INTEREST.  The granting of declaratory and injunctive relief will be in the public interest, in that there is always a public interest in the protection of constitutional rights, especially fundamental rights.  "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Awad v. Ziriax*, 670 F.3d at 1132 *quoting G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994). ( "While the public has an interest in the will of the voters being carried out . . . the public has a more profound and long-term interest in upholding an individual's constitutional rights."  *Id.; see also Cate v. Oldham*, 707 F.2d 1176, 1190 (10th Cir. 1983) (noting "[t]he strong public interest in protecting First Amendment values").

## VII.  -Prayer for Relief-

**WHEREFORE**, Plaintiffs incorporate the allegations previously stated and make the following prayer for relief from this Court:

A.   Assume jurisdiction of the cause to determine this controversy and set this case down promptly for hearing.

B.   Declare, pursuant to 28 U.S.C. Sec. 2201-02 and Fed.Rul.Civ.Pro. 57, that 74 Okla. Stat. Sec. 4110 and the subsequent actions of these Defendants in placement of the Display are unconstitutional both facially and in their application.

C.   Enter a permanent injunction pursuant to Fed.R.Civ.P. 65 requiring Defendants to remove the Display from the Oklahoma State Capitol as a violation of the

Establishment Clause of the First Amendment, and the Due Process and Equal

Protection Clauses of the Fourteenth Amendment.

D.  Pursuant to Rule 54(d) of the Federal Rules of Civil Procedure and 42 U.S.C. Sec.

1988, Plaintiffs should be allowed their costs and attorney fees herein against

Defendants as permitted by law.

E.  Any and all such other and further relief as this Court deems just and equitable

against Defendants.

Respectfully submitted,

s/Edwin Kagin
**EDWIN F. KAGIN**
(*Pro Hac Vice* Admission Pending)
Attorney for Plaintiffs
10742 Sedco Drive
Union, Kentucky 41091
Phone:  (859) 384-7000
Email: ekagin@atheists.org

s/Eric Husby
**ERIC O. HUSBY**
(*Pro Hac Vice* Admission Pending)
Attorney for Plaintiffs
2001 W. Cleveland St.
Tampa, Florida 33606
Phone:  (813) 251-3337
Fax: (813) 283-4949
Email: ehusby@husbylegal.com

s/Micheal Salem
_____

**MICHEAL SALEM** (OBA #7876)
*Salem Law Office*
101 East Gray, Suite C
Norman, Oklahoma 73069
Telephone: (405) 366-1234
Telefax: (405) 366-8329
Email: msalem@msalemlaw.com


ATTORNEYS FOR  PLAINTIFFS

American Atheists, Inc.
William Poire
Aimee Breeze